HENRY CLINTON, Appellee, v. DES MOINES MUSIC COMPANY, Appellant.

No. 39457.

*J. G. Mitchell, C. T. McEniry,* and *Brammer, Brody, Charlton & Parker,* for appellant.

*Chester J. Eller,* for appellee.

GRIMM, J.—This is the second presentation of this case to this court. See *Clinton v. Des Moines Music Co.,* 223 N. W. 882. The defendant was a corporation, engaged in selling, among other things, musical instruments, and the plaintiff was employed as a salesman, under the following contract:

"November 1, 1927.

"Mr. Henry Clinton,
"Care Des Moines Music Co.,
"Des Moines, Iowa.
"Dear Mr. Clinton:

"Relative to our conversation covering the new working arrangements, please be advised that the following constitutes an agreement between the Des Moines Music Co., Inc., and yourself for a period of twelve months dated October 25th, 1927.

"The Des Moines Music Co., Inc., to pay you forty dollars per week as a drawing account. An allowance of one per cent. of the net sales to cover car expenditures with a maximum of twenty-five dollars per month. *Your sales quota on this basis at twenty-five thousand dollars ($25,000.00) net.*

"$26,000.00 to $40,000.00 net, 5 per cent. additional.

"$40,000.00 and over, net, 7 per cent. additional.

"The above agreement can be cancelled by either party upon thirty days' written notice.

"Trusting that the above agreement will prove mutually beneficial.

"Yours very truly,
"Des Moines Music Co., Inc.,
"[Signed]    Theo Hohtanz, Vice Pres.
"[Signed]    H. Clinton."

(Italics by the court.)

The plaintiff continued to work under this contract until February 4, 1928, during which time he had made sales in the aggregate of $11,028. It is claimed by the plaintiff that, on January 24, 1928, the defendant breached the contract, by reason of the defendant's refusal, as is claimed by the plaintiff, without justification, to allow a commission of $5.00 on a $500 sale reported by the plaintiff and accepted by the defendant. On account of this refusal on the part of the defendant, plaintiff, on January 4, 1928, tendered his resignation in writing, in the following terms:

"Jan. 24th, 1928.

"Mr. Theodore Hohtanz,
"Des Moines Music Co.,
    "Des Moines, Iowa.
"Dear Sir:
    "Please accept my resignation effective February 24th, 1928.

"Yours truly,
"[Signed]    H. Clinton."

Later, on February 1, 1928, plaintiff wrote a letter amplifying his letter of January 24th. This was followed by a peremptory discharge by the defendant of the plaintiff on February 4, 1928.

The case turns largely on three points: First, what was the legal effect of the plaintiff's written resignation, tendered on January 24th; second, what was the legal effect of the defendant's breach of contract on January 24th in denying the commission, and on February 4th in the peremptory discharge of the plaintiff; and third, if the contract was terminated through the fault of the defendant, what was the measure of the plaintiff's recovery?

I. What was the legal effect of the plaintiff's written resignation, tendered on January 24th?

Under the terms of the contract of November 1, 1927, the employment had an absolute limitation of twelve months after October 24, 1927; but in addition thereto, it reserved to each of the parties the definite right to terminate the contract on thirty days' notice. Plaintiff's letter of January 24th cannot be construed otherwise than as an election on his part to terminate the contract February 24, 1928.

II. If the defendant breached the contract on January 24th by failure to pay the commission which the plaintiff demanded, the plaintiff was not bound to cancel the contract on that account. He might have continued to work, and reserved his right to recover, if possible, that item of compensation at a later date. On the contrary, however, he elected to avail himself of the thirty-day cancellation clause in the contract, by serving a notice on January 24, 1928. Furthermore, the defendant's peremptory discharge of the plaintiff on February 4th did not deprive the plaintiff of his right to recover under the terms of his contract for the thirty days following January 24, 1928, or the disputed $5.00 commission, if properly proven.

III. We now come to a consideration of the measure of plaintiff's recovery. The court instructed the jury, in substance, that the plaintiff was entitled to recover: First, cash at the rate of $40 per week up to February 24, 1928; second, 1 per cent of the net sales, to cover car expenditures; third, a 5 per cent additional commission for all net sales made up to and including February 24, 1928, in excess of $2,083 plus per month, this being the monthly ratio of a $25,000 minimum net amount of sales for the twelve months covered by the contract. In other words, the court construed the words "your sales quota on this basis at twenty-five thousand dollars ($25,000.00) net" to mean that, upon sales made month by month in excess of one twelfth of $25,000, the plaintiff is entitled to 5 per cent commission, additional to all other sums of payment, and this regardless of whether a total of $25,000 net in sales has been made. On this presentation to this court, it is conceded that the plaintiff is entitled, first, to a judgment against the defendant for $35.99 car allowance, and second, for $86.33 salary, or drawing account; but the defendant complains of the ruling of the court

in construing the contract concerning commissions as above set forth.

As the case is presented to us at this time, the sole controlling question is, What is meant by the words ''your sales quota on this basis at twenty-five thousand dollars ($25,000.00) net?'' It is the contention of the plaintiff that from month to month the plaintiff is entitled to 5 per cent commission on all sales in excess of one twelfth of the $25,000; and it is the contention of the defendant that the plaintiff is not entitled to any commission except the 1 per cent car expenditure coverage until a total of the $25,000 net has been sold, after which the plaintiff is entitled to 5 per cent additional on all amounts between $26,000 and $40,000 net, and 7 per cent on all amounts in excess of $40,000 net sales.

Manifestly, this is a layman's form of contract. It is far from clear. This whole contract has been very carefully studied, and given much thought. The original record and the record on resubmission have been carefully read, and we reach the conclusion that the plaintiff is not entitled to recover any commission except the car expenditure commissions until a total of $25,000 net of goods has been sold. Great stress is laid in the argument on the use of the word ''quota.'' Its use is an inapt one. The whole contract must be read together. The mere fact that the rights of the parties are not carefully guarded is not persuasive. We cannot make a new contract for them. We think the words ''your sales quota on this basis'' mean that the defendant agreed to pay the plaintiff by drawing account $40 per week, and 1 per cent of net sales to cover car expenditures, with a maximum of $25 per month for this purpose, on the agreement that the plaintiff would sell $25,000 in the twelve-months period. In other words, it being impossible to know just how much the plaintiff could sell, the defendant fixed a quota of $25,000 a year net, for which he agreed to pay $40 a week drawing account and 1 per cent car expenditure. Manifestly, the plaintiff might have dragged along, and, instead of selling $2,083 plus per month, he might have sold less than $1,000; nevertheless he would have been entitled to his drawing account and his 1 per cent car expenditure; but the defendant protected itself by being able, if it saw that the plaintiff was not likely to make good on his $25,000 net in the twelve

months, to serve notice on the plaintiff and terminate the contract.

We think it clearly appears that it was not the intention of the parties that the additional 5 per cent should be paid until $25,000 net of goods had been sold, and then only on goods sold amounting to $26,000 and up to $40,000, and that the 7 per cent applied only to all goods sold over $40,000. In other words, these commissions were not to be paid when the goods were sold *at the rate* of more than $25,000 a year, but only paid *when* more than $25,000 net of goods had been sold.

Any further discussion on this contract would be of no service to either bench or bar.

IV. There is no conflict in the evidence, and the only reversible error in the record arises on the question of the instruction given concerning the measure of damages. The appellee may, within 30 days from the filing of this opinion, remit from his judgment the sum of $222.97, leaving a balance of $122.32 in his favor. Upon plaintiff's election, the judgment will be accordingly affirmed on condition; otherwise reversed.—*Affirmed on condition.*

All the justices concur except DE GRAFF, J.